UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  2:05-CR-54 PS |
| | ) | |
| BRANDON CANDIANO | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Defendant Brandon Candiano was initially indicted with one count of using his computer to allegedly attempt to induce a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b).  Nearly seven months later the government superseded the indictment and added an additional count of the same charge.  The superseding indictment occurred six days after Defendant had filed a Renewed Motion for Revocation of the Detention Order.  Defendant now claims that the bringing of the superseding indictment was vindictive and in retaliation for his exercising his legal right to seek a review of his pretrial detention order.  Because suspicious timing alone is not enough to establish a claim of vindictive prosecution, Defendant's Motion to Dismiss Superseding Indictment Due to Vindictive Prosecution is denied.

### I.  FACTUAL BACKGROUND

On January 31, 2005, Defendant Brandon Candiano was charged via complaint with a single count of using a facility of interstate commerce to knowingly attempt to persuade an individual, whom Defendant believed to be a girl under eighteen years, to engage in sexual activity.  18 U.S.C. § 2422(b).  On February 3, 2005, Magistrate Judge Rodovich held a detention hearing and ordered Defendant detained.  Defendant was then indicted on one count of

18 U.S.C. § 2422(b) – the same violation named in the complaint – on April 21, 2005.  On May 5, 2005, counsel for Defendant filed a motion to revoke Magistrate Judge Rodovich's detention order, arguing that the statute requires the person whom Defendant enticed to actually be a minor or law enforcement official, not a volunteer for a non-profit watchdog organization, as in Defendant's case.  The Court construed the motion as a motion to dismiss the indictment and not as an appeal of the detention order, and on August 25, 2005, the Court denied that motion.  Defendant appealed the Court's decision to the Seventh Circuit on September 1, 2005, but then voluntarily dismissed that appeal in November 2005 after obtaining new counsel.

On November 10, 2005, Defendant, through his new counsel, filed a renewed motion for revocation of detention order.  In his renewed motion, Candiano squarely challenged Magistrate Judge Rodovich's detention order, and the matter was set for a hearing before this Court.  In the meantime, according to Defendant, the government served a grand jury subpoena on Dan Candiano, Defendant's father, on November 10 or 11, 2005.  The subpoena required Mr. Candiano's appearance before a grand jury on November 16, 2005.  On that day, the grand jury returned a superseding indictment against Defendant, adding another count for a new violation of 18 U.S.C. § 2422(b).

Two days later on November 18, 2005, Defendant filed the current Motion to Dismiss Superseding Indictment due to Vindictive Prosecution, alleging that the government "misused the Grand Jury and filed the superceding indictment in retaliation for Mr. Candiano exercising his legal right to a review of his pretrial detention." (Def.'s Mot. to Dismiss at 2.)  Defendant also requests an evidentiary hearing for the Motion.

The government claims that the timing of the superseding indictment was based on when

2

it received information from Commander Mitchell Kajzer of the High Tech Crimes Unit at the St. Joseph County Prosecutor's Office, who had conducted a previous independent investigation of Defendant. (*See* Gov't Resp. at 2-3.) Evidently, Commander Kajzer had been investigating Candiano for an extended period of time, and neither the FBI nor Kajzer knew of the other's investigation. (*Id.*) According to the government, Kajzer only became aware of an ongoing FBI investigation of Defendant after he made contact with the Dyer Police Department on an unrelated matter. (*See* Gov't Resp. at 6.) By happenstance, at this meeting, Kajzer first became aware that Candiano had been indicted. (*Id.*) The government has provided Kajzer's Investigative Report dated November 1, 2005, which notes that Kajzer met with a Dyer Police Department detective on an unrelated case and that the two discussed the fact that Defendant was currently incarcerated on a federal charge. (*See* Gov't Resp., Ex. A.) The Dyer Police detective informed Kajzer that he thought the FBI in Merrillville had conducted the investigation of Defendant, and so Kajzer contacted the FBI on November 1, 2005 and sent his case investigation file to the FBI. (*See id.*) The government also provides a report prepared by FBI Special Agent Eric Wojtkun, stating that on November 3, 2005 he received Kajzer's case investigative report. (*See* Gov't Resp., Ex. B.)

As mentioned above, about a week later, around November 10 or 11, 2005, Defendant's father was subpoenaed to testify before the grand jury relating to the new information received by the FBI from Detective Kajzer. The superseding indictment was then returned against Defendant on November 16, 2005, six days after Defendant filed his motion challenging his detention.

3

## II. DISCUSSION

"A vindictive prosecution claim arises when the government pursues prosecution in retaliation for the exercise of a protected statutory or constitutional right." *United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003) (per curiam); *see also United States v. Goodwin*, 457 U.S. 368, 372 (1982) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.") (citation and internal quotations omitted). In this case, Defendant claims that he was indicted on the second charge because he exercised his constitutional right to a review of the pretrial detention order.

To obtain a hearing as requested by Defendant, "he must offer sufficient evidence to raise a reasonable doubt that the government acted properly" in indicting Defendant on the second count. *Falcon*, 347 F.3d at 1004. Because the charges here were added before trial, Defendant "'must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication.'" *Id.* at 1004 (citation omitted). In other words, "[a]n evidentiary hearing is not required unless a defendant has established that: (1) the prosecutor harbored genuine animus; and (2) absent this motive, defendant would not have been prosecuted." *United States v. Cyprian*, 23 F.3d 1189, 1196 (7th Cir. 1994).

Defendant has not met this high bar. He has not provided any objective evidence of prosecutorial animus; the only evidence that Defendant has shown to the Court is suspicious timing – the government convened a grand jury, which indicted Defendant several days after he filed a renewed motion for revocation of detention order. But "[w]hen the government brings additional charges before trial, but after the defendant exercises a procedural right, evidence of

4

suspicious timing alone does not indicate prosecutorial animus." *Falcon*, 347 F.3d at 1005; *see also United States v. Bullis*, 77 F.3d 1553, 1559 (7th Cir. 1996) ("We presume that a prosecutor's decision to seek increased charges in a superseding indictment is valid."). Therefore, "[o]nly if a defendant can present evidence other than or in addition to timing will the burden shift to the government to come forward with proof that the motivation behind the charge was proper." 347 F.3d at 1005.

Even the request for an evidentiary hearing in Defendant's reply states that he is seeking information regarding when the prosecutor first learned of the facts behind the second indictment and when the prosecutor made the decision to file the additional charge and why. (Def.'s Reply at 1.) Defendant hopes to obtain only evidence of suspicious timing at his hearing, which is simply not sufficient to withstand the uphill battle of proving vindictive prosecution. *Falcon*, 347 F.3d at 1005-06 (affirming district court's denial of defendant's motion to dismiss for vindictive prosecution, without an evidentiary hearing, where defendant only offers evidence of suspicious timing for claim); *United States v. Cooper*, No. 01 CR 1078-6, 2005 WL 1799274, at *5 (N.D. Ill. July 26, 2005) ("Even if this Court found the timing of the section 851 notice suspicious, without more, [defendant] cannot prevail on his claim of vindictive prosecution."); *United States v. Segal*, 299 F. Supp. 2d 840, 846 (N.D. Ill. 2004) ("Suspicious timing is insufficient to warrant an evidentiary hearing.") (citation omitted).

Furthermore, this is not a case where Defendant is entitled to a presumption of vindictiveness. "Although there are limited circumstances where a defendant is entitled to a presumption of vindictiveness, those cases ordinarily arise after trial, following the defendant's exercise of his right to de novo review." *Falcon*, 347 F.3d at 1005; *see also Goodwin*, 457 U.S.

5

at 370, 381-82 (declining to apply a presumption of vindictiveness where the prosecution indicted defendant on a felony charge after defendant requested a trial by jury on pending misdemeanor charges on the same incident).  "A defendant seeking to prove prosecutorial vindictiveness for a decision to indict must present objective evidence showing genuine vindictiveness."  *United States v. O'Hara*, 301 F.3d 563, 571 (7th Cir. 2002).

It is clear that Defendant has not provided sufficient evidence "to shift the burden to the government or require a hearing" and is not entitled to a presumption of vindictiveness.  *Falcon*, 347 F.3d at 1005; *see also Bullis*, 77 F.3d at 1559 ("Where either the presumption of vindictiveness applies or the defendant has come forward with objective evidence of actual vindictiveness, the burden shifts to the government to come forward with evidence that the motivation behind the charges was proper.").

Nevertheless, even if Defendant had fulfilled his burden, the government has responded to Defendant's charges to the Court's satisfaction.  The government explained that it only received information from the St. Joseph County Prosecutor's Office after a chance conversation between the Commander Kajzer at that Office and a Dyer Police Department detective on November 1, 2005.  The FBI then received the case file regarding Defendant from Commander Kajzer on November 3, 2005.  About a week later on either November 10 or 11, 2005, the government subpoenaed Defendant's father to testify in front of a grand jury on November 16, 2005.  The prosecutor thus provides a reasonable explanation of these events, which negates any suspicion or misgivings regarding the timing.  *See Bullis*, 77 F.3d at 1559 ("Therefore, there is no evidence to suggest that the relatively quick entry of the superseding indictment following the successful motion to transfer was anything more than a temporal coincidence."); *United States v.*

6

*Napue*, 834 F.2d 1311, 1330 (7th Cir. 1987) ("[Prosecutor] needs broad discretion in the timing of the indictment and its contents, both of which depend on changing factors such as when information becomes available to the prosecutor, how the prosecutor views the evidence, and how and when the prosecutor's theory of the case evolves.").

Therefore, without more evidence than what has already been presented, the Court must deny Defendant's Motion and his request for a hearing.

### III.  CONCLUSION

Defendant's Motion to Dismiss Superseding Indictment Due to Vindictive Prosecution is **DENIED** [Doc. 69].  Defendant's request for a hearing on the Motion is also **DENIED**.

**SO ORDERED.**

ENTERED: January 25, 2006

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
